[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11191
_____

D. C. Docket No. 1:06-cv-21598-PCH

CC-AVENTURA, INC.,

Plaintiff - Counter Defendant - Appellee,

CLASSIC RESIDENCE MANAGEMENT LIMITED PARTNERSHIP,

Plaintiff - Appellee,

versus

WEITZ COMPANY, LLC,

Defendant - Cross Defendant - Cross Claimant -
Counter Claimant - Third Party Plaintiff -
Counter Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 11, 2012)

Before DUBINA, Chief Judge, and PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

In this surety case, obligee/contractor Weitz contends that the district court erred by failing to properly follow the majority opinion in Dooley & Mack Constructors, Inc. v. Developers Surety & Indemnity Co., 972 So. 2d 893 (Fla. Dist. Ct. App. 2007).  The district court concluded that the surety Fidelity was not liable on a surety bond because Weitz had failed to give notice to Fidelity of the subcontractor Aero's default before Weitz undertook to remedy the default itself.

In Dooley, the subcontractor defaulted on its obligations.  Id. at 894.  Rather than notify the surety, the obligee/contractor remedied the default itself and then brought suit against the surety.  Id.  The majority in Dooley interpreted the surety bond (which included by incorporation the subcontract between the obligee/contractor and the subcontractor) to have two alternative routes by which the surety could face liability if the subcontractor defaulted on its obligations: (1) the bond itself stated that the obligee/contractor could notify the surety of the default and require that the surety remedy the default; or (2) the subcontract (incorporated into the bond) stated that the obligee/contractor could remedy the default itself and then later sue the surety to cover the shortfall.

The Dooley majority conceded that if the obligee/contractor had proceeded under the first route, then it would have been required to first give notice to the

2

surety, because that provision was included with "standard" surety bond language that requires the obligee/contractor to first give notice. Id.[1]  But the court concluded that the second route (where the obligee/contractor could remedy the default itself) did not include any of the "standard" surety language that requires notification, id. at 895, and it also did not include any other language explicitly requiring notice to be given, id. (citing RLI Ins. Co. v. St. Patrick's Home for the Infirm & Aged, 452 F. Supp. 2d 484 (S.D.N.Y. 2006), for the proposition that the "absence of [an] explicit notice requirement of principal's default to surety distinguishes cases finding that notice is condition precedent to surety's payment under bond.").  Since the obligee/contractor proceeded under this second route, it did not have to give prior notice to the surety.

In the case sub judice, the bond (and, by incorporation, the subcontract) similarly has two routes by which the surety could be exposed to liability if the subcontractor defaulted: the surety could undertake to remedy the default, or the obligee/contractor could undertake to remedy the default.  But unlike the scenario in Dooley, the record in this case shows that both routes did include an explicit

---

[1]    The Dooley majority noted that "[u]nder a familiar term of a 'standard' surety bond, which is included in this one, such a failure [to first provide notice to the surety] would indeed result in a termination of the surety's obligations." Dooley, 972 So. 2d at 894.  The "familiar term" of a "standard" surety bond in Dooley was quoted as: "Whenever subcontractor shall be, and declared by Obligee to be in default under the Subcontract, . . . the Surety may promptly remedy the default . . . ." Id. at 894 n.1 (emphasis in original).

3

requirement that notice first be given to the surety,[2] and it also was included along with the same provision as the "standard" language that would require notice to first be given (as <u>Dooley</u> itself acknowledged).

In other words, the language of the relevant documents in <u>Dooley</u> was different from the relevant language here.  In <u>Dooley</u>, the subcontract gave the general contractor "the option, but not the obligation, to notify."  In contrast, the subcontract in this case made reference to Weitz's ability to remedy the default, but only after Weitz terminated the subcontractor's performance for cause, and thus only after reasonable notice.[3]  Reading all the language in the relevant documents

---

[2]       The pertinent part of the bond stated:

Whenever Principal shall be, and <u>be declared by Obligee to be in default</u> under the subcontract, the Obligee having performed Obligee's obligations thereunder:

(1) Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or;

(2) Obligee <u>after reasonable notice to Surety may</u>, or Surety upon demand of Obligee may <u>arrange for the performance of Principal's obligation</u> under the subcontract subject to the provisions of paragraph 3 herein; . . . .

Doc. 1173-3 (emphasis added).

[3]       Section 10.1 of the subcontract provided:

If [Aero] fails or neglects to carry out [its] Work in strict compliance with the Subcontract Documents or is otherwise in default of any of its obligations under the Subcontract Documents, and fails to commence and continue correction of such default or neglect with diligence and promptness, [Weitz] may, after 48 hours following delivery to [Aero] of written notice thereof and without prejudice to any other remedy [Weitz] may have, (i) supplement [Aero's] performance with

4

here harmoniously in order to give effect to all provisions, as Florida law requires, it is clear in this case that the surety, Fidelity, had a right to reasonable notice before Weitz undertook to arrange for the performance of the work to cure the default.[4]  In <u>Dooley</u>, the obligee/contractor proceeded under a route that did not

additional material, supplies, equipment or labor, pay for same and deduct the amount so paid from any money then or thereafter due [Aero] (if such offset is not sufficient, [Aero] shall pay any deficiency promptly upon demand), or (ii) terminate [Aero's] continuing performance under the Agreement. Termination of performance may be immediate (without prior notice) in the event of conditions hazardous to persons or property. Such termination of performance shall be deemed for cause, and Section 10.4 [Consequences of Termination for Cause] shall apply thereto.

Section 10.4 provided:

Upon a termination of [Aero's] continuing performance under the Agreement for cause, [Weitz] may, without limitation to any other available remedies, proceed as follows: (i) direct [Aero] to immediately leave the site, but to give possession of all completed materials and supplies at the site or stored off-site, to [Weitz] for use in completing [Aero's] Work; . . . [Weitz] shall also provide or cause to be provided such other materials, supplies, tools, equipment, machinery, labor, services and other items necessary to complete [Aero's] Work; or (ii) by registered or certified mail addressed to [Fidelity] . . . require [Fidelity] to provide such materials, supplies, tools, equipment, machinery, labor, services and other items as may be necessary to complete [Aero's] Work in strict compliance with the Subcontract Documents. [Weitz] shall apply any unpaid balance of the Subcontract Sum to pay for such completion costs; provided, that [Weitz] may first require [Aero] or [Fidelity] . . . to fund any anticipated excess completion costs. In all such events, if the unpaid balance of the Subcontract Sum exceeds the costs of completing [Aero's] Work together with interest on such costs and together with any offsets and deductions available to [Weitz], such excess shall be paid to [Aero]. However, if such costs, interest deductions and offsets exceed such unpaid balance, [Aero] or [Fidelity] shall pay the difference to [Weitz] upon demand.

[4]      <u>See</u> note 2, <u>supra</u>.

5

require notice to first be given to the surety, and so the surety was not relieved of its obligations just because the obligee/contractor failed to give notice before undertaking to remedy the default itself. But in our case, the contract language was written differently, and it did require that Weitz first give notice to the surety before Weitz undertook to remedy the default itself.

Weitz's argument has been that it did not need to give notice before undertaking to remedy the default itself. Accordingly, Weitz has not challenged the district court's conclusion it never sent "reasonable notice" to Fidelity.[5]

Because Weitz was required to give reasonable notice to Fidelity before Weitz undertook to remedy Aero's default, and because Weitz has failed to challenge the district court's conclusion that Weitz never gave reasonable notice, we agree with the district court that Fidelity is not liable on the surety bond. As Dooley stated, under Florida law, a surety is relieved of its obligation if the obligee/contractor fails to give the notice that is required by the bond. See Dooley, 972 So. 2d at 894.

For the foregoing reasons, the judgment of the district court is

---

[5]    Weitz's reply brief suggests that failure to thus notify a surety of default (triggering the surety's right to cure the default) would discharge a surety only upon a showing of prejudice. We decline to address that argument because it was raised for the first time in the reply brief.

6

AFFIRMED.