# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――――

Argued September 15, 2009        Decided November 27, 2009

No. 08-7059

HUNT CONSTRUCTION GROUP, INC.,
APPELLANT

v.

NATIONAL WRECKING CORPORATION, ET AL.,
APPELLEES

―――――

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-00165)

―――――

*David T. Dekker* argued the cause for appellant. On the briefs were *Michael S. McNamara* and *Laura R. Thomson*.

*Michael C. Zisa* argued the cause for appellees. With him on the brief were *Stephen M. Seeger* and *Leonard A. Sacks*.

*Edward G. Gallagher* filed the brief for *amicus curiae* in support of appellees and urging affirmance.

Before: TATEL and BROWN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Hunt Construction Group sought relief in a diversity action against a defaulting subcontractor and against two sureties on the subcontractor's performance bond. The sureties' defenses included the ground that Hunt had failed to give timely notice of default, thereby depriving them of any realistic opportunity to exercise their rights under the bond to cure the subcontractor's defective performance. The district court agreed, granted summary judgment in their favor, and issued an order under Rule 54(b) of the Federal Rules of Civil Procedure, enabling Hunt to file an interlocutory appeal on the issue. *Hunt Constr. Group, Inc. v. Nat'l Wrecking Corp.*, 542 F. Supp. 2d 87 (D.D.C. 2008). Hunt now appeals, claiming that the bond does not make such notice a condition of the sureties' liability. We affirm.

\* \* \*

Hunt subcontracted excavation work for the construction of an Embassy Suites Hotel in Washington, D.C., to the National Wrecking Corporation, which agreed to complete the work by February 12, 2004. Around the time the performance was due to be completed, Hunt learned that the work would be delayed. Hunt complained to National Wrecking and incurred additional expenses for expediting the work of other subcontractors to make up for National Wrecking's delays and meet the overall project deadline. National Wrecking finally completed its work on April 6, 2004.

Suing National Wrecking for breach of contract, Hunt in its second amended complaint added as defendants the two sureties on a performance bond for National Wrecking—XL Reinsurance America, Inc., and the United States Surety Company. Although Hunt admits that it knew by early February 2004 that National Wrecking's excavation work

would be delayed, it did not then—or for five months thereafter—give the sureties notice of its position that the delays constituted a default under the subcontract, opting instead, without consulting the sureties, to use the other subcontractors to make up for National Wrecking's performance. Hunt formally notified the sureties of its potential claim when it declared National Wrecking to be in default on July 13, 2004, more than three months after National Wrecking's work had been completed.

* * *

The performance bond form at issue in this case—which Hunt selected—provides as follows:

[A] National Wrecking Corporation . . . as Principal . . . and United States Surety Company & XL Reinsurance . . . , as co-sureties . . . are held and firmly bound unto Hunt Construction Group, Inc. . . . as Obligee . . . in the amount of . . . $1,960,496 . . . .

[B] NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly and faithfully perform said subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

. . . .

[C] Whenever Principal shall be, and be declared by Obligee to be in default under the subcontract, the Obligee having performed Obligee's obligations thereunder:

(1) Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or;

(2) Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee, may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein;

(3) The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the subcontract. . . .

J.A. at 130 (bracketed letters added for clarity of reference). The bond incorporates the language of the American Institute of Architects ("AIA") Document A311.

The parties agree that the issue is governed by District of Columbia law. Hunt urges us to conclude that, if directly presented with the issue, the District's courts would adopt the reasoning of *Colorado Structures, Inc. v. Insurance Co. of the West*, 167 P.3d 1125 (Wash. 2007), which held that the AIA Document A311 bond at issue there did not require notice as a condition precedent to recovery.

But the provisions of paragraph C are nonsensical without an understanding that the surety's duties depend on the obligee's declaring the principal to be in default and giving notice of the declaration to the principal and the surety. Under Hunt's contrary reading, paragraph C's explicit grant to the surety of a right to remedy the default itself would be operative only if the obligee chose to give it notice. Such a view would render that right nearly meaningless. Thus, construing the A311 bond, the Second Circuit explained in *Elm Haven Construction Ltd. Partnership v. Neri Construction LLC*, 376 F.3d 96 (2d Cir. 2004):

In order to trigger [the surety]'s liability under the Performance Bond, two conditions had to be met. First, [the principal] had to be "in default" under the

subcontract agreement, and second, [the obligee] had to "declare[] [the principal] to be in default under the" subcontract agreement. Such a declaration of default had to be made to [the surety] in precise terms.

*Id.* at 100*; see also L&A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 111 (5th Cir. 1994) ("A declaration of default sufficient to invoke the surety's obligations under the [A311] bond must be made in clear, direct, and unequivocal language. The declaration must inform the surety that the principal has committed a material breach or series of material breaches of the subcontract, that the obligee regards the subcontract as terminated, and that the surety must immediately commence performing under the terms of its bond.").

Even if Hunt had declared a default in a timely fashion, the bond makes clear that the obligee may arrange to complete unfinished work only "*after* reasonable notice to Surety." J.A. at 130 (emphasis added). In other words, even after declaring a default, Hunt could proceed to remedy the default on its own only after it gave "reasonable notice" to the sureties that it intended to do so. It gave no such notice.

*Colorado Structures*, on which Hunt primarily stakes its claim, reads the default and notice requirements out of the A311 bond form by reasoning that paragraph A, by itself, creates the surety's liability to the obligee and that paragraph B subjects that liability to "one—and only one—express condition subsequent," namely, that the principal has not fully and faithfully performed the contract. 167 P.3d at 1131-32. *Colorado Structures* read paragraph C as merely providing that certain remedies would be available when the conditions contained in that paragraph (that the principal has defaulted, the obligee has declared the default, and the obligee has performed its obligations) were met. Otherwise, the common

law would provide for remedies and the measure of damages. *Id.* at 1132.

Contrary to the *Colorado Structures* court, we do not attach talismanic significance to the fact that paragraph B "us[ed] the word 'condition' in its singular form," *id*., even in the singular preceded by the word "the." In reading contract provisions we take the contract's entirety into account, seeking to give all its provisions effect. *Steele Founds., Inc. v. Clark Constr. Group, Inc.*, 937 A.2d 148, 154 (D.C. 2007). Hunt points us to no case in the District of Columbia suggesting that a contract's labeling a particular provision as a "condition," in the singular, gives rise to an inference that no other provisions of the contract can also be conditions precedent. And in the context of the bond form before us, such an inference would gut rights specifically afforded the surety.

Citing *International Fidelity Insurance Co. v. County of Rockland*, 98 F. Supp. 2d 400, 435 (S.D.N.Y. 2000), and *Walter Concrete Construction Corp. v. Lederle Laboratories*, 788 N.E.2d 609, 610 (N.Y. 2003), Hunt also argues that because the contract could have imposed a condition precedent in clearer language than it did, we should construe the bond not to include such a condition. With the benefit of hindsight, of course, the parties in nearly every case of contract interpretation could have made their contract more clear, at least in a way suited to the problem which in fact arose—though possibly making it *less* clear with reference to other problems. The relevant question is not whether the contract uses the most precise language a court can imagine ex post but how best to read the contract *as actually written*. See *Mamo v. Skvirsky*, 960 A.2d 595, 599 (D.C. 2008).

Finally, Hunt contends that even if the bond form requires notice of some kind, the requirement is merely an independent

promise for which the sureties may recover damages, not a condition precedent to their liability under the bond. See generally 13 Williston on Contracts § 38:5, at 382 (4th ed. 2005). But "[i]n the District of Columbia, '[n]otice provisions in insurance contracts are of the essence of the contract.'" *Travelers Indem. Co. v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978, 991 (D.C. 2001) (quoting *Graycoat Hanover F St. Ltd. P'ship v. Liberty Mut. Ins. Co.*, 657 A.2d 764, 768 (D.C. 1995)); see also *U.S. Shipping Bd. Merchant Fleet Corp. v. Aetna Cas. & Sur. Co.*, 98 F.2d 238, 242 (D.C. Cir. 1938) ("By almost universal custom fidelity bonds as now written require notice of default within a limited period of time, and that provision the courts enforce according to its strict terms. And in such a case it is immaterial whether the surety is able to show it was prejudiced by failure to receive notice . . . ."). In context, the requirements listed in the first clause of paragraph C are properly read as true conditions precedent, in the absence of which the surety has no liability on the bond. Sureties who require notice of default so that they can themselves take remedial action presumably are unwilling to submit to the vagaries of litigation a calculation of the exact impact of being denied notice.

Hunt primarily invokes *Conesco Industries, Ltd. v. Conforti & Eisele, Inc.*, 627 F.2d 312, 316 (D.C. Cir. 1980), for the proposition that proof of prejudice is required, but we so stated only after finding that the particular bond before the court did not make notice "a condition precedent to liability under the bond." In light of our contrary interpretation of the bond form here, *Conesco*'s view does not apply.

The judgment of the district court is therefore

*Affirmed.*