*Wildewood Operating Company, LLC v. WRV Holdings, LLC, et al.*, No. 388, September Term 2022.  Opinion by Tang, J.

**PRINCIPAL AND SURETY – REMEDIES OF CREDITORS – CONDITIONS PRECEDENT TO ACTION AGAINST SURETY – NOTICE AND DEMAND**

Although performance bond language lacked explicit timely notice requirement, language is read as requiring obligee owner to timely notify surety of default and termination of construction contract before third party took over remedial work.  To read otherwise would render meaningless surety's rights to exercise mitigation options under bond.

**PRINCIPAL AND SURETY – NATURE AND EXTENT OF LIABILITY OF SURETY – PERFORMANCE OF CONTRACT OR CONDITIONS BY CREDITOR**

**PRINCIPAL AND SURETY – DISCHARGE OF SURETY – NEGLECT TO GIVE NOTICE TO SURETY OF DEFAULT – EFFECT OF OMISSION OR DELAY**

Obligee owner's failure to provide timely notice to surety of obligor contractor's default and termination of construction contract before third party took over remedial work deprived surety of its right to participate in curing contractor's default under performance bond, discharging surety of liability under bond.

**PRINCIPAL AND SURETY – REMEDIES OF CREDITORS – CONDITIONS PRECEDENT TO ACTION AGAINST SURETY – NOTICE AND DEMAND**

Requirement in provision of performance bond to demonstrate actual prejudice when obligee owner fails to comply with notice requirement governing intent to declare contractor's default did not apply to separate notice requirement governing declaration of contractor's default and termination of construction contract.

**PRINCIPAL AND SURETY – RIGHTS AND REMEDIES OF SURETY – AS TO CREDITOR**

Surety suffered prejudice as a matter of law when it was deprived of its contractually agreed-upon rights to exercise mitigation options under performance bond.

Circuit Court for St. Mary's County
Case No. C-18-CV-17-000118

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 388

September Term, 2022

---

WILDEWOOD OPERATING COMPANY, LLC

v.

WRV HOLDINGS, LLC, *ET AL*.

---

Beachley,
Tang,
Kehoe, Christopher B.*

JJ.

---

Opinion by Tang, J.

---

Filed: October 30, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

\* Kehoe, Christopher B., now retired, participated in the hearing of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the preparation of this opinion.

This appeal concerns a surety's obligations under a construction performance bond. Wildewood Operating Company, LLC ("Wildewood Operating"), appellant, filed a complaint against First Indemnity of America Insurance Company ("First Indemnity"), appellee, for breach of a performance bond, in which it sought from First Indemnity indemnification for an amount incurred to complete construction after the contractor defaulted.[1] First Indemnity moved for summary judgment, arguing that it was discharged of liability under the bond. The Circuit Court for St. Mary's County granted the motion, and Wildewood Operating appealed. For the reasons set forth below, we affirm the judgment of the circuit court.

## FACTUAL BACKGROUND

In January 2013, Wildewood Operating purchased from WRV Holdings, LLC ("WRV") a parcel of land located in St. Mary's County, with the intention of constructing an assisted living facility (the "Facility"). Pursuant to the sales contract, WRV allowed Wildewood Operating to perform site work on WRV's adjacent parcel necessary for the construction of the Facility. The work included, *inter alia*, the construction of a submerged gravel wetland ("SGW") to manage stormwater.

In conjunction with the sale, Wildewood Operating entered into a contract with Clark Turner Construction, LLC ("Clark Turner") for the construction of the Facility, including SGW and other bioretention facilities. The construction contract required Clark

---

[1] Wildewood Operating also sued WRV Holdings, LLC for unjust enrichment, but the claim was disposed of by summary judgment and is not the subject of this appeal.

Turner to substantially complete the work no later than one year from the date of commencement.

First Indemnity issued a performance bond set forth in a standard, American Institute of Architects ("AIA") form A312 (2010) (the "Bond").[2] The Bond refers to Clark Turner as "Contractor," Wildewood Operating as "Owner," and First Indemnity as "Surety." The Bond incorporates by reference the construction contract and outlines Wildewood Operating's obligation to notify First Indemnity in the event of Clark Turner's default.  The notice requirements provide:

> § 3   If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after
>
> > .1  the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;
>
> > .2  the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

---

[2] The AIA is an organization that, among other things, "[s]ets the industry standard in contract documents with more than 100 forms and contracts used in the design and construction industry." *Schneider Elec. Bldgs. Critical Sys., Inc. v. W. Sur. Co.*, 231 Md. App. 27, 34 n.3 (2016) (citation omitted).

.3 the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

§ 4 Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

Section 5 of the Bond describes the election of remedies available to First Indemnity

upon satisfaction by Wildewood Operating of the notice requirements:

§ 5 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor's Default; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

.2 Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

3

Clark Turner did not construct SGW and certain bioretention facilities in accordance with the construction contract. In February 2014, the St. Mary's County Soil Conservation District Board declared the site out of sequence and required that the site come into compliance by March 2014. Clark Turner, however, did not complete the work necessary to bring the site into compliance.

In July 2014, Wildewood Operating contracted to sell the Facility to an unrelated entity, Wildewood Owner, LLC ("Wildewood Owner"). The closing was scheduled for November 24, 2014. One of the requirements for the sale was Wildewood Operating's representation and warranty to Wildewood Owner that, at the time of closing, no government approvals were still needed, and construction had been completed in compliance with all applicable laws affecting the property.

As of November 2014, Clark Turner still had not properly constructed SGW. Nor had it obtained the necessary government approvals for the work. As a result, Wildewood Operating, Clark Turner, WRV, and Wildewood Owner, among others, entered into a work agreement ("Work Agreement"), dated November 20, 2014, to ensure completion of the work on WRV's parcel. The Work Agreement required Clark Turner to complete the work by June 1, 2015, to allow for approval from the County by June 30, 2015.

Pursuant to the Work Agreement, Wildewood Operating provided a letter of credit in the amount of $150,000 in favor of WRV, under which WRV could draw down if Clark Turner defaulted on its obligations to complete the work. The Work Agreement further provided that if approval from the County was not obtained by the deadline, the work "shall

4

become the sole property" of WRV, and WRV "shall be solely responsible" for the completion of the work. First Indemnity was not a party to the Work Agreement.

Clark Turner failed to complete the work pursuant to the Work Agreement, and WRV demanded and received $150,000 under the letter of credit. Using those proceeds, WRV retained and paid Binnacle, LLC ("Binnacle"), as project manager, to complete the defaulted work. Binnacle completed the work by October 2015 and obtained all necessary government approvals.

By letter dated November 3, 2015, Wildewood Operating notified First Indemnity that it was considering declaring Clark Turner in default. Wildewood Operating advised First Indemnity, for the first time, that Clark Turner had failed to achieve substantial completion of the work under the construction contract by December 2013, nor did it achieve final completion by February 2014. Wildewood Operating also informed First Indemnity that Wildewood Operating had sold the property to Wildewood Owner; Wildewood Operating had entered into the Work Agreement; Wildewood Operating had established a letter of credit in WRV's favor; Clark Turner had continued to default; and WRV had drawn down on the letter of credit.

After a conference with First Indemnity, Wildewood Operating notified First Indemnity, by letter dated November 20, 2015, that it declared Clark Turner in default under the construction contract and terminated that contract.[3] Wildewood Operating stated that it "ha[d] now met the conditions of Section 3 of the Bond[,]" and it "demand[ed] that

_____

[3] By that time, Clark Turner had filed for bankruptcy.

5

[First Indemnity] promptly take action in accordance with Section 5 of the Bond." First Indemnity denied Wildewood Operating's claim.

## PROCEDURAL HISTORY

In August 2017, Wildewood Operating filed a complaint against First Indemnity, alleging that First Indemnity breached the terms of the Bond, and sought $150,000 in damages.

First Indemnity moved for summary judgment on two bases. First, it argued that its obligations to perform under the Bond were discharged because Wildewood Operating entered into a new contract (the Work Agreement) that superseded the construction contract. Second, First Indemnity argued that Wildewood Operating's notification of Clark Turner's default and termination *after* a third party (WRV/Binnacle) had completed the defaulted work breached the Bond's condition precedent and precluded First Indemnity from exercising its rights and remedies under Section 5. This preclusion, First Indemnity argued, constituted prejudice as a matter of law.

Wildewood Operating opposed the motion. As to First Indemnity's first basis, Wildewood Operating argued that the Work Agreement did not modify First Indemnity's obligations under the construction contract, nor did it supersede the contract. Rather, the Work Agreement merely extended the deadline for Clark Turner to complete the work and thus did not discharge First Indemnity of its obligation to indemnify Wildewood Operating under the Bond. As to First Indemnity's second basis, Wildewood Operating responded that First Indemnity did not demonstrate "actual prejudice" under Section 4. It argued that disputes of material fact in that regard warranted denial of the motion.

6

At the motions hearing, First Indemnity reiterated the two alternate bases for granting the motion, emphasizing that the second basis was "an even clearer" argument for summary judgment in its favor. At the conclusion of the hearing, the court granted summary judgment in favor of First Indemnity. Focusing on the second basis, the court determined that, because the defaulted work "was already completed" by the time Wildewood Operating provided notice of Clark Turner's default and termination, First Indemnity was deprived of its right to elect a remedy under Section 5 of the Bond, which resulted in "inherent prejudice" to First Indemnity. As to the other basis, the court concluded that First Indemnity was discharged of its obligations under the Bond when Wildewood Operating entered into the Work Agreement.

## ISSUES PRESENTED

On appeal, Wildewood Operating challenges the bases on which the court granted summary judgment.[4] For clarity, we rephrase the issues as follows:

1. Did the court err in granting summary judgment in favor of First Indemnity on the basis that First Indemnity was prejudiced when Wildewood Operating notified First Indemnity of the contractor's default and termination after a third party had remedied the defaulted work?

---

[4] The questions raised by Wildewood Operating in its brief are:

A. Did the Circuit Court err in finding there were no material facts at issue in the case where there were factual issues as to whether the Work Agreement modified First Indemnity's obligations to Wildewood [Operating] and whether First Indemnity had demonstrated actual prejudice?

B. Did the Circuit Court err in finding the work agreement superseded the construction contract?

7

2. Did the court err in granting summary judgment in favor of First Indemnity on the basis that the Work Agreement discharged First Indemnity of its obligations under the Bond?

As to the first question, we hold that the circuit court did not err. Accordingly, we do not address whether summary judgment was properly granted on the alternate basis.

## STANDARD OF REVIEW

"In reviewing a grant of summary judgment under Md. Rule 2-501, we independently review the record to determine whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Myers v. Kayhoe*, 391 Md. 188, 203 (2006). "The question of whether a trial court's grant of summary judgment was proper is a question of law subject to *de novo* review on appeal." *Id*. "We review the record in the light most favorable to the nonmoving party and construe any reasonable inferences that may be drawn from the facts against the moving party." *Id.*

## PARTIES' CONTENTIONS

Wildewood Operating argues that the circuit court erred in granting summary judgment because disputes of material fact exist as to whether First Indemnity suffered "actual prejudice" under Section 4 of the Bond. It emphasizes that Section 4 requires that First Indemnity demonstrate "actual prejudice," and even if such demonstration is made, First Indemnity's obligation would be reduced only "to the extent" of the prejudice shown.

Wildewood Operating acknowledges that the requirement to demonstrate "actual prejudice" applies when the owner fails to comply with the notice requirement in Section 3.1 (notice "considering declaring" a default), not when the owner fails to comply with the

8

notice requirement in Section 3.2 (notice of default and termination of the construction contract). But it maintains that it complied with the notice requirement in Section 3.2, and First Indemnity is not absolved from demonstrating actual prejudice.

First Indemnity responds that Wildewood Operating did not comply with the condition precedent necessary to trigger First Indemnity's obligations under the Bond when notification of Clark Turner's default and termination was provided *after* the defaulted work had been remedied by a third party. It contends that, because Wildewood Operating did not satisfy the condition precedent, First Indemnity is discharged from performing under the Bond. Regardless of whether the "actual prejudice" requirement applies to Sections 3.1 or 3.2, First Indemnity asserts that it was prejudiced as a matter of law when it was precluded from exercising its options under Section 5.

## DISCUSSION

In the construction industry, bonding is essential to ensure completion of a contracted-for project in the event of a contract party's default. *See* Peter A. Alces & Susan Sieger-Grimm, *The Law of Suretyship and Guaranty* § 10:1 (June 2023). A surety bond is a "tripartite agreement among a principal obligor [*i.e.*, the contractor], his obligee [*i.e.*, the owner], and a surety." *Nat'l Union Fire Ins. Co. v. David A. Bramble, Inc.*, 388 Md. 195, 205 (2005) (citations omitted). It is a "three party arrangement intended to provide personal security for the payment of a debt or performance of an obligation." *Id.* (citation omitted). A surety, in other words, is "[a] person who binds himself for the payment of a sum of money, or for the performance of something else, for another." *Id.* at 205–06 (citation omitted).

9

While there are various forms of construction surety bonds, our focus is on the performance bond. "[T]he purpose and intent of the performance bond generally is to protect the named obligee against the contractor's default[.]" Philip L. Bruner & Patrick J. O'Connor, Jr., 4A *Bruner and O'Connor on Construction Law* § 12:14 (August 2023) ("*Bruner & O'Connor*"). "In a performance bond context, the surety assures the obligee that if the principal fails to perform its contractual duties, the surety will discharge the duties itself[.]" *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 300 (2004).

"[T]he surety's performance obligation customarily is offered in various expressions, such as performance of the contract and payment for labor and materials furnished in furtherance of the contract, protection of the land against the filing of mechanics' liens, indemnification of the obligee against loss caused by the contractor's failure to perform, or completion of the contract unconditionally." *Bruner & O'Connor*, § 12:14; *see Atl. Contracting*, 380 Md. at 299 (expressions of the surety's obligation can be "performing [the defaulted contractual duties] or paying the obligee the excess costs of performance").

"A surety bond is a contract and is to be construed as such." *John McShain, Inc. v. Eagle Indem. Co.*, 180 Md. 202, 205 (1942). The bond must be construed in accordance with traditional rules of objective contract interpretation, meaning the clear and unambiguous language of the bond is controlling. *See Nat'l Union Fire Ins. Co. v. Wadsworth Golf Constr. Co.*, 160 Md. App. 257, 268–69 (2004). It follows that "the liability of a surety is not to be extended, by implication, beyond the terms of [its] contract."

*Mayor & City Council of Balt. v. Fid. & Deposit Co.*, 282 Md. 431, 441 (1978) ("To the extent, and in the manner, and under the circumstances pointed out in [its] obligation, [it] is bound, and no farther."). "Where the contract incorporates as a part of itself the specifications, and the contract is, by reference, incorporated as a part of the bond, the contract, the specifications, and the bond must all be construed together." *Lange v. Bd. of Educ. of Cecil Cnty.*, 183 Md. 255, 261 (1944).

Generally, notice of the obligor's default triggers the surety's obligations under the performance bond. *Bruner & O'Connor*, § 12:13. Once triggered, the bond typically provides the surety with various remedial options. *Id*. § 12:15. "The purpose of the obligee giving the surety 'notice of default' is to permit the surety to review its options under the bond in order to minimize its liability." *Id*. § 12:36.

> Where the surety's performance bond options include contract completion by takeover, tender, or financing of the principal, *timely notice of default is an essential prerequisite* to the surety's contract completion obligation and loss mitigation efforts. Lack of proper and timely notice of default to a performance bond surety having such options has resulted in discharge of the surety's bond liability.

*Id*. (footnote omitted and emphasis added).

The AIA form 312 performance bond, the bond at issue here, "is one of the clearest, most definitive, and widely used type of traditional common law 'performance bonds' in private construction." *Id.* § 12:16 (citations omitted). "The form was developed to define clearly the scope and extent of the surety's liability, the 'trigger' of the surety's obligation to perform, the options available to the surety in satisfying its bond obligations, and the duration of the surety's obligations." *Id*.

11

The owner must satisfy all of [the Section 3] conditions.[5] To trigger the surety's obligations, the owner must not itself be in default and must properly follow the contract termination procedure after giving the contractor and surety whatever opportunity to "cure" the deficiencies upon which the owner relies to terminate the bonded contract that are mandated by the contract documents and the applicable law.

*Id.* (footnotes omitted).

A condition precedent is "a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises[.]" *Chirichella v. Erwin*, 270 Md. 178, 182 (1973) (citation omitted). Although no particular words are necessary to create an express condition, certain words and phrases—*i.e.*, "if," "provided that," "when," "after," "as soon as," and "subject to"—are used to indicate that performance has been expressly made conditional. *Hartford Fire Ins. Co. v. Himelfarb*, 355 Md. 671, 680 (1999). Wildewood Operating acknowledges that Section 3 of the Bond enumerates certain conditions precedent.

"Generally, when a condition precedent is unsatisfied, the corresponding contractual duty of the party whose performance was conditioned on it does not arise." *Chesapeake Bank v. Monro Muffler/Brake, Inc.*, 166 Md. App. 695, 708 (2006) (citation omitted); *Laurel Race Course, Inc. v. Regal Constr. Co.*, 274 Md. 142, 154 (1975) ("[T]here is no duty of performance and there can be no breach by nonperformance until

---

[5] The AIA updated an earlier, 1984 version of the form A312 bond in what is now embodied in the 2010 version. Under Section 3.1 of the 2010 version, "the owner's request of a conference is no longer a 'condition precedent' to triggering the surety's liability[.]" *Bruner & O'Connor*, § 12:16 n.4. Notwithstanding the change, "[t]he obligee's declaration of contractor default and formal termination of the contractor's right to proceed remain the crucial conditions precedent to the surety's performance bond liability." *Id.*

the condition precedent is either performed or excused.") (citations omitted). Thus, if the obligee fails to perform a condition precedent in the performance bond, the surety is not required to perform under the bond. *See Miller Lumber Indus., Inc. v. Brown*, 46 Md. App. 399, 409 (1980) (reversing grant of summary judgment in favor of obligee where condition precedent in the performance bond was not performed by obligee).

While our courts have not addressed the issue presented, decisions by courts in other jurisdictions provide compelling and persuasive authority in support of affirmance. In *Western Surety v. United States Engineering Construction, LLC*, 955 F.3d 100 (D.C. Cir. 2020), the United States Court of Appeals for the District of Columbia Circuit addressed the notice requirements under Section 3 and the "actual prejudice" requirement under Section 4 of the A312 (2010) performance bond. The case involved the construction of a new South African embassy in Washington, D.C. *Id*. at 101. A contractor/obligee entered into a subcontract with a subcontractor/obligor to perform sheet metal work. *Id*. The contractor obtained the bond from the surety in which the surety and subcontractor bound themselves to ensure the work under the subcontract was completed. *Id*.

When the subcontractor failed to complete the work, the contractor declared the subcontractor in default and terminated the subcontract. *Id*. at 102. The contractor, however, did not notify the surety of the default and termination until about nine months after the termination occurred. *Id*. at 102–03. By that time, the contractor had arranged for the completion of the defaulted work without the surety's knowledge. *W. Sur. Co. v. U.S. Eng'g Co.*, 375 F. Supp. 3d 1, 3 (D.D.C. 2019).

The surety filed suit against the contractor, seeking, *inter alia*, a declaration that the surety's obligations under the bond had been discharged because of the contractor's "extreme delay" in providing notice to the surety of the subcontractor's default and termination. *W. Sur. Co.*, 955 F.3d at 103. The surety moved for summary judgment, asserting that the contractor failed to comply with a condition precedent, thereby relieving the surety of any liability. *Id*. at 101. The district court granted summary judgment in the surety's favor. *Id*. at 103.

On appeal, the D.C. Circuit affirmed, holding that the surety was not obligated to perform under the bond because the contractor provided late notice of default and termination. *Id*. at 105. Notwithstanding the absence of an express timely notice requirement in Section 3.2, the court held that the obligee must provide timely notice to the surety of any default and termination before it elects to remedy the default on its own terms. *Id*. at 104–05. It explained:

> [T]he A312 bond provides four alternative methods by which the surety can respond to the default. By unilaterally completing [the subcontractor's] remaining contract obligations before notifying [the surety], [the contractor] deprived [the surety] of its contractually agreed-upon opportunity to participate in remedying [the subcontractor's] default.
>
> To be sure, under several provisions of the bond, [the surety] could not have responded to the default without [the contractor's] consent. But even so, that limitation did not give [the contractor] the right to address the situation without consulting [the surety] and then recover under the bond nine months later. In other words, despite the bond's lack of an explicit *timely* notice requirement, the performance bond is properly read as requiring [the contractor] to notify [the surety] of the default before engaging in self-help remedies. Otherwise, "the explicit grant to the surety of a right to remedy the default itself would be operative only if the obligee [the contractor] chose to give it notice," thereby rendering the options in [S]ection 5 "nearly meaningless." Accordingly, because the bond expressly provides the surety

14

> with the opportunity to participate in curing the subcontractor's default, we hold that it is a condition precedent to the surety's obligations under the bond that the owner must provide timely notice to the surety of any default and termination before it elects to remedy that default on its own terms.

*Id.* (emphasis in original) (quoting *Hunt Constr. Grp. v. Nat'l Wrecking Corp.*, 587 F.3d 1119, 1121 (D.C. Cir. 2009)). Because the contractor failed to provide such timely notice, the surety was not obligated to perform under the bond. *Id*. at 105 (citing *Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 192 F. Supp. 3d 1326, 1334 (S.D. Fla. 2016), *aff'd*, 681 F. App'x 771 (11th Cir. 2017) (if an obligee hires a new subcontractor before the surety has an opportunity to respond to termination, the surety's obligations under the bond are discharged)).

The contractor argued that, if there was a failure to provide notice under any section, Section 4 of the bond required the surety to demonstrate "actual prejudice" to avoid liability. *W. Sur. Co.*, 955 F.3d at 105. To the extent the court implied a timely notice requirement under Section 3.2, the requirement to demonstrate actual prejudice to avoid liability under the bond should equally apply to any such implied condition. *Id*.

In reading the plain language of that provision, the D.C. Circuit observed that the requirement to demonstrate actual prejudice applies to a failure to give notice only under Section 3.1 (notice that the obligee is "considering declaring" a default). *Id*. There is no similar requirement when the obligee fails to give timely notice of default and termination under Section 3.2. *Id*. It held that, under the plain language of the bond, the surety is not required to demonstrate actual prejudice to avoid liability under the bond if the obligee fails to provide notice of default and termination under Section 3.2. *Id*. at 106 (citing

15

*United States ex rel. Agate Steel, Inc. v. Jaynes Corp.*, No. 2:13-CV-01907-APG-NJK, 2016 WL 8732302, at \*7 (D. Nev. June 17, 2016) ("failure to comply with [S]ection 3.2 [of A312 bond] is a condition precedent to [the surety's] obligations arising under the bond, and the parties contractually agreed that [the surety] need not show prejudice from that failure to relieve it of its obligations.")).

The D.C. Circuit proceeded to explain that even if the surety had to demonstrate actual prejudice to avoid liability, it would not be liable under the bond due to the "inherent prejudice" it suffered under the circumstances:

> By failing to provide notice under [S]ection 3.2, [the contractor] robbed [the surety] of its contractually agreed-upon opportunity to participate in the mitigation process entirely. Although not necessary to our opinion, it would seem that is inherently prejudicial. Thus, even if we required [the surety] to demonstrate actual prejudice, it would not be liable under the bond due to the inherent prejudice it suffered.

*Id*.

Courts in other jurisdictions have employed the same reasoning and reached similar conclusions. *See, e.g., Seaboard Sur. Co. v. Town of Greenfield*, 370 F.3d 215, 219–20 (1st Cir. 2004) (concluding that surety was discharged from liability under an A312 (1984) bond when owner contracted with different contractor without first allowing surety opportunity to fulfill its completion options under bond; even if surety must show injury, loss, or prejudice, it met this hurdle, given its deprivation of mitigation opportunities); *Stonington Water St. Assoc., LLC v. Hodess Bldg. Co.*, 792 F. Supp. 2d 253, 267 (D. Conn. 2011) (obligee's failure to notify surety of obligor's default and unilateral decision to hire successor contractors to complete defaulted work deprived surety of opportunity to

16

mitigate damages and were material breaches of A312 performance bond); *Town of Plainfield v. Paden Eng'g Co.*, 943 N.E.2d 904, 916 (Ind. Ct. App. 2011) (lack of notice regarding contractor's termination was presumptively prejudicial to sureties).

We are persuaded by the reasoning in *Western Surety* and similar decisions by courts in other jurisdictions. We construe the Bond to be read as requiring Wildewood Operating to timely notify First Indemnity of the default before a third party took over remedial work. *See W. Sur. Co.*, 955 F.3d at 104–05. To read the language of the Bond otherwise would render meaningless the options set forth in Section 5 of the Bond and "gut rights" specifically afforded to First Indemnity. *Id*. at 104 (quoting *Hunt*, 587 F.3d at 1121–22). This reading comports with the fundamental principle that a contract must be construed in its entirety, and effect must be given to each clause to avoid an interpretation that casts out or disregards a meaningful part of the language.[6] *See Cochran v. Norkunas*, 398 Md. 1, 17 (2007).

We hold that, because Wildewood Operating failed to provide timely notice under Section 3.2, it did not satisfy a condition precedent in the Bond, and First Indemnity's liability under the Bond is discharged. *See W. Sur. Co.*, 955 F.3d at 104–05. Our conclusion is in accord with the general principle that "when a condition precedent is

---

[6] At oral argument, Wildewood Operating argued that, if the Court reads a timely notice requirement into Section 3.2, then the "actual prejudice" requirement in Section 4 must "carry over" and apply to Section 3.2. This point, however, was not raised in Wildewood Operating's brief, and we decline to address it. *See Uninsured Employers' Fund v. Danner*, 388 Md. 649, 664 n.15 (2005) (the Court need not address arguments, raised for the first time at oral argument, that were not briefed on appeal). In any event, we conclude, *infra*, that even if the Bond required First Indemnity to demonstrate actual prejudice, First Indemnity was prejudiced as a matter of law under the circumstances.

unsatisfied, the corresponding contractual duty of the party whose performance was conditioned on it does not arise." *Chesapeake Bank,* 166 Md. App. at 708; *Laurel Race Course, Inc.*, 274 Md. at 154.

Based on the plain language of Section 4, the "actual prejudice" requirement applies to the failure to give notice under Section 3.1, not Section 3.2. *See W. Sur. Co.*, 955 F.3d at 105–06. Even if the Bond required First Indemnity to demonstrate actual prejudice to avoid liability, we conclude that First Indemnity was prejudiced as a matter of law when it was precluded from exercising its rights under Section 5. *See id*. at 106. Those rights are significant. Had First Indemnity received timely notice under Section 3.2, it would have had the opportunity to elect a remedial option under Section 5 and minimize its liability.

Wildewood Operating claims that the out-of-state cases conflict with Maryland law as set forth in *General Builders Supply Co. v. MacArthur*, 228 Md. 320 (1962). In *General Builders*, the owner entered into an agreement with a builder under which the builder proposed to construct a house for $29,431. *Id*. at 322. After making payment for materials, the owner became concerned about the builder's ability to meet its obligations and demanded a performance bond to assure compliance with the construction contract. *Id*. at 322–23. The surety executed the bond with the builder and delivered it to the owner. *Id*. at 323. "The obligation of the bond was to the effect that if the principal did not perform its contract with the owner, then the surety would 'remedy the default' or 'complete the contract in accordance with its terms and conditions.'" *Id*. Thereafter, the builder was not able to meet its obligations under the construction contract. *Id*. "The surety was notified of the builder's default, but it denied liability, and refused to complete the house." *Id*. at

18

323–24. When the surety also defaulted, the owner proceeded to complete the construction of the house, spending more than the contract price. *Id*. at 324. The owner sued the surety on the performance bond, and the court entered judgment against the surety in an amount for the excess over the contract price. *Id*.

On appeal, the surety argued, *inter alia*, that it was relieved of liability because the owner breached the construction contract by expending more money than was permitted under the contract. *Id*. at 326. The Supreme Court of Maryland rejected the contention and affirmed the judgment, reasoning:

> The very purpose of the performance bond was to secure the owner against loss under the contract, and it imposed on the surety an obligation to pay such damages as are ascertained to result from the default of the contractor, without regard to the specific performance of the contract.

> The liability of a surety is coextensive with that of the principal, and it is clear that the liability of the surety is measured by the contract of the principal.

> While the construction contract and the appended plans and specifications were not included in the record extract, as they probably should have been, there is enough in the record extract and the appendix to show that the owner was to be furnished with a completed dwelling for the sum of money stipulated in the contract. Since there was not substantial compliance with the terms of the contract, the owner had a right to expend such sums as were necessary for completion in accordance with the plans and specifications and, in turn, hold the surety liable for the excess over the contract price. Furthermore, since the terms of the contract, including the plans and specifications, were incorporated in and made a part of the suretyship agreement, *it is irrelevant whether the surety or the owner completed the construction as the result would be the same in either event*.

*Id*. (cleaned up and emphasis added).

19

Relying on the highlighted passage, Wildewood Operating contends that the essential facts in the instant case are no different than the facts that supported judgment against the surety in *General Builders*, and therefore, we should reverse the grant of summary judgment in First Indemnity's favor. Wildewood Operating's reliance on *General Builders* is misplaced because the facts and circumstances are distinguishable from those in the instant case. Significantly, the bond in *General Builders* did not implicate the same notice requirements as the Bond here. Nor was there any argument by the surety that it should have been discharged of liability because the owner failed to comply with a condition precedent.

**CONCLUSION**

We decline to extend First Indemnity's liability beyond the terms of the Bond. *See Mayor & City Council of Balt.*, 282 Md. at 441. The parties entered into a contract wherein Wildewood Operating agreed to satisfy certain conditions precedent, and First Indemnity was entitled to elect among specified options upon the satisfaction of those conditions. Because Wildewood Operating failed to timely notify First Indemnity of Clark Turner's default and termination under Section 3.2, First Indemnity's liability under the Bond is discharged. Section 4 of the Bond does not require First Indemnity to demonstrate actual prejudice for failure to give notice under Section 3.2, but even if it did, First Indemnity was prejudiced as a matter of law under the circumstances. While we recognize that the purpose of the performance bond is to secure the owner against loss under the bonded contract and impose on the surety an obligation to cure the default of the contractor, that purpose "is not a blank check to the judicial power to rule out the pacts and agreements between the

20

parties." *St. Paul Fire & Marine Ins. Co. v. VDE Corp.*, 603 F.3d 119, 123 (1st Cir. 2010) (citations omitted). For the reasons stated, the circuit court did not err in granting summary judgment in First Indemnity's favor.

<div style="margin-left: 50%;">

**JUDGMENT OF THE CIRCUIT COURT FOR ST. MARY'S COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**

</div>

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0388s22cn.pdf